ORIGINAL

FILED
JAN 2 2 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MALCOLM B. BLANKENSHIP III,

*Plaintiff,*

vs.

THE UNITED STATES OF AMERICA,

*Defendant*

COMPLAINT

08-48 C

**JURISDICTION**

1. The Court has jurisdiction under 28 U.S.C. § 1491(a), (1) and (2). The action seeks allowances and ancillary relief against the United States Government for back pay and allowances. The statute mandating the payment of monies is 37 U.S.C. § 204. The monetary value of the relief requested is approximately $100,000 (one hundred thousand dollars).

**PARTIES**

2. Plaintiff, Malcolm B. Blankenship III, is a United States Citizen, and former Naval Officer, whom the Navy has refused to award aviation wings after one and a half years of training.

3. Defendant is the United States of America.

**STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4. In 2005, Plaintiff submitted an application to the Board for Correction of Naval Records relating to the arbitrary decision to release him from aviator school.

5. On 8 December 2005, Plaintiff was advised that the BCNR had denied his application.

6. Plaintiff has exhausted all administrative remedies available to him.

7. 28 U.S.C. § 2501 requires the filing of a claim before this court within six years after such claim first accrues.

8. Plaintiff was removed from aviation training on 22 January 2002.

9. As this Complaint is filed within six years of the date of his removal from training, it is timely filed. 50 App. U.S.C. § 526(a); Bickford v. United States, 656 F.2d 636, 639 (Ct. Cl. 1981).

## STATEMENT OF FACTS

### Aviation Training and Attrition

10. Plaintiff entered active duty in the United States Navy on 17 October 1999.

11. On 23 November 2000, Plaintiff entered Naval Flight School, a program that lasts approximately one and a half years.

12. Naval Aviator Training consists of flight training events in the basic, intermediate, and advanced phase. After successfully completing a flight, a grade of "up" (satisfactory) or "down" (unsatisfactory) is awarded.

13. Plaintiff was successful in every training flight through all states, and was given an "up" on all flights except the last two in the multi-engine phase. These are scores for flights conducted over a year and a half of training.

14. Plaintiff was permitted to retake only one of the "down" flights, and was successful in his second attempt. This left Plaintiff with only one unsatisfactory flight.

15. After receiving his second "down" flight, Plaintiff was told he was mid-stage marginal in that current phase. This came as a shock to Plaintiff, as he had not been counseled on being marginal.

16. Commander, Naval Air Training Instruction 1500.4F (CNATRAINST 1500.4F) Chapter 1 governs the training Plaintiff received. Paragraph 715 discusses "marginal performance," and the requirements placed on instructors for students who fall into this category. The paragraph states "Early identification of marginal performance is key to the determination of actions the command and student must take to improve student performance." Further, it states, "Students' grades shall be reviewed weekly to determine marginal performance."

17. When Plaintiff learned he was "marginal," he had just flown his 26th flight in the RI stage. He had received no counseling regarding marginal performance until RI-24, where he received his first "down" mark.

18. Paragraph 718 of CNATRAINST 1500.4F states that "The purpose of marginal designation is to highlight a student's trends, and apply practical steps to determine what actions are required to prevent unsatisfactory completion." A review of the marginal student's jacket is to be performed, with specific courses of action recommended to improve performance. The student is to be counseled about what he must do to successfully complete the program. Only at the end of the special training, is the student recommended for continued training or referral to a training review board (TRB).

19. Plaintiff did not benefit from the purpose and safeguards in place for those receiving a marginal designation. Rather than receiving counseling and extra training, Plaintiff was referred to a TRB. ( An initial panel of his officer instructors recommended retaining the plaintiff in training. )

20. On 20 October 2001, Plaintiff's name was released to the local Corpus Christi, Texas newspaper as recently receiving his wings after graduating from flight training.

21. On 19 November 2001, the United States Navy conducted a Training Review Board (TRB), pursuant to CNATRAINST 1500.4F, on behalf of Plaintiff. Plaintiff was recommended for attrition from the Naval Flight School based on his performance.

22. On 20 November 2001, the TRB recommended Plaintiff be removed from further pilot training. The board found that even though there were certain administrative errors and oversights in Plaintiff's file, the remedial measures and extra training sought by Plaintiff were not enough to bring his overall score up to a passing grade to earn his aviator wings.

**Plaintiff's Military Service**

23. Plaintiff entered active duty in the United States Navy on 17 October 1999.

24. Plaintiff was commissioned through Officer Candidate School and was commissioned on 03 January 2000.

25. Plaintiff was subsequently promoted to Lieutenant JG and Lieutenant .

26. Plaintiff was separated from active duty and discharged from the Navy with an Honorable Discharge effective 1 October 2003, upon his completion of his required active service.

**Application to the Board for Correction of Naval Records**

27. In 2005, Plaintiff filed an Application for Correction of Naval Records.

28. On 8 December 2005, the Board denied Plaintiff's request. The Board advised Plaintiff his decision was denied after finding the evidence submitted by Plaintiff was insufficient to establish the existence of probably material error or injustice.

## LEGAL CLAIM

**The BCNR's action was arbitrary, capricious, and unsupported by substantial evidence.**

29. 10 U.S.C. § 1552 provides for the correction of errors in the record of a member of the military. Upon timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military record… when the Secretary considers it necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a)(1).

30. The BCNR is established by the Secretary of the Navy and consists of civilians of the executive part of the Department of the Navy who are appointed by the Secretary of the Navy. 32 C.F.R. § 723.2(a). The BCNR will review all matters that are properly before it to determine the existence of error or injustice. 32 C.F.R. § 723.2(b).

31. The BCNR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

32. The BCNR has authority to consider whether an injustice occurred due to a service member's lack of knowledge and consequent inability to act upon changes in federal law in order to restore benefits no longer available to him by statute. 41 Op. Att'y Gen. 94, 97 (1952).

33. The BCNR's decision was arbitrary, capricious, and unsupported by substantial evidence, and did not make a rational connection between the facts found and the choice made, as required by law.

34. The BCNR relied on an advisory opinion from Navy Personnel Command in making its decision. The decision recommends not awarding Plaintiff his aviator wings due to unsuccessful completion of the program. The opinion stated that when Plaintiff was removed from training, he was in the bottom one percent of his peers in training. For this reason, Plaintiff was not afforded extra training flights to improve his performance.

35. As stated in paragraphs 16-18, the purpose of a marginal designation is to help the student aviator identify steps needed to improve performance. This designation is to be given at the first sign of trouble, and not at the end of the phase as was the case with Plaintiff. As it was too close to graduation, the command found that Plaintiff would not have time to bring his scores up to passing – even with extra training.

36. It is an injustice that Plaintiff suffer from the command's failure to follow regulatory guidance for student aviation training. Plaintiff's name was released to the local newspaper as having received his aviator wings. He was days away from graduation, and had received numerous positive notations in his training records, and successes in flight exercises, when he was suddenly cut from the program.

37. Plaintiff did not benefit from the procedural safeguards in place for student aviators. It was administrative error that he was not identified for remedial training earlier in the phase. In the interest of justice, Plaintiff should be awarded his aviator wings, or at least have the opportunity to benefit from the remedial training and earn his wings.

38. Money damages suffered by the Plaintiff include his loss of pay for being in a flight status and all benefits and allowances pertaining thereto.

**PRAYER FOR RELIEF**

WHEREFORE, for the reasons aforesaid stated, Plaintiff respectfully requests the Court

grant the following relief:

A. Order that Plaintiff be reinstated to flight status or flight training; and that he be granted his wings as a Naval Aviator.

B. Order Plaintiff's military records be corrected to reflect the same;

C. Order that Plaintiff be awarded all back pay and other benefits to which he in entitled as a result of his flight status;

D. Award Plaintiff's attorneys fees and costs expended in pursuit of this claim;

E. Grant any other relief that the Court deems just and proper.

Respectfully submitted,

William E. Cassara
Attorney for Plaintiff, Malcolm B. Blankenship III
918 Hunting Horn Way
Evans, GA 30809