No. 08-48 C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MALCOLM B. BLANKENSHIP III,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

GREGORY G. KATSAS
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

CHRISTOPHER L. KRAFCHEK
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-0041
Fax: (202) 514-8624

OF COUNSEL:
LCDR MARC S. BREWEN
Office of the Judge Advocate General
General Litigation (Code 14)
1322 Patterson Ave, SE Suite 3000
Washington Navy Yard, DC 20374-5066
Tel: (202) 685-5441
Fax: (202) 685-5472

May 15, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

STATEMENT OF THE CASE ........ 1

QUESTIONS PRESENTED ........ 3

SUMMARY OF ARGUMENT ........ 3

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 9

I. The Complaint Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted Because The Relief Requested Is Non-justiciable. ........ 9

A. Standard of Review for Dismissal ........ 10

B. Non-Justiciability ........ 10

II. In the Alternative, Judgment On the Administrative Record Should Be Granted to Defendant ........ 13

A. Standard of Review ........ 14

B. The BCNR's Decision Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Law Or Regulation. ........ 15

C. The Navy's Failure To Counsel Plaintiff After His Mid-Stage Marginal Performance On September 7, 2001 Was Harmless ........ 19

1. The Granting of Extra Training Flights and Instruction Was Discretionary Not Mandatory. ........ 20

2. Plaintiff's Academic and Flight Performance Was So Poor He Could Not Have Successfully Completed Flight Training. ........ 21

3. Plaintiff Would Have Been Removed From Flight Training Based Upon His December 2001 Misconduct. ........ 22

4. Mr. Blankenship Had An Affirmative Responsibility To Review His Training Records With The Training Cadre. ........ 23

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

## CASES

Adkins v. United States,
68 F.2d 1317 (Fed.Cir. 1996) .......... 12

Adkins v. United States,
68 F.3d at 1321 .......... 13

Atchinson v. District of Columbia,
73 F.3d 418 (D.C. Cir. 1996) .......... 10

Bannum, Inc.v. United States,
404 F.3d 1346 (Fed. Cir. 2005) .......... 14

Chayra v. United States,
23 Cl. Ct. 172 (1991) .......... 14

Cole v. United States,
26 Cl. Ct. 1018 (1992) .......... 14

Curry v. United States,
221 Ct. Cl. 741,
609 F.2d 980 (1979) .......... 15

Gilligan v. Morgan,
413 U.S. 1 (1973) .......... 11

Haselrig v. United States,
53 Fed. Cl. 111 (1992) .......... 11

Heisigv. United States,
719 F.2d 1153 (Fed. Cir. 1983) .......... 13, 15

Hishon v. King & Spalding,
467 U.S. 69 (1984) .......... 10

Lowal v. MCI Communications Corp.,
16 F.3d 1271 (D.C. Cir. 1994) .......... 10

Orloff v. Willoughby,
345 U.S. 83 (1953) .......... 11

Sanders v. United States,
219 Ct. Cl. 285,
594 F.2d 804 (1979) .......... 14, 17

Scheuer v. Rhodes,
416 U.S. 232 (1974) .......... 10

Skinner v. United States,
219 Ct. Cl. 322,
594 F.2d 824 (1979) .......... 15

United States v. Murphy,
993 F.2d 871 (Fed.Cir. 1993) .......... 12, 13, 19

Voge v. United States,
844 F.2d 776 (Fed. Cir. 1988) .......... 10, 11

Wagner v. United States,
365 F.3d 1358 (Fed. Cir. 2004) .......... 19

Wronke v. Marsh,
787 F.2d 1569 (Fed. Cir.1986) .......... 15, 17

**STATUTES**

10 U.S.C. § 6021 .......... 11, 13

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MALCOLM B. BLANKENSHIP III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-48 C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE,**
**FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule of the Court of Federal Claims ("RCFC") 12(b)(6), the United States respectfully requests that the Court dismiss the complaint filed by Mr. Malcolm B. Blankenship, III, ("plaintiff") for failure to state a claim upon which relief can be granted. Alternatively, defendant moves for judgment upon the administrative record pursuant to Rule 56.1 of the RCFC. In support of our motion to dismiss pursuant to RCFC 12(b)(6), we rely upon the facts contained in plaintiff's complaint. In support of our alternative motion for judgment upon the administrative record, we rely upon this brief and the record filed simultaneously with this motion.

**STATEMENT OF THE CASE**

Plaintiff was an officer in the United States Navy ("Navy") from August 1999 until September 2003 and began training as a student naval aviator in May 2000. After three unsatisfactory performance ratings, plaintiff was recommended for removal from flight training. This recommendation was approved and plaintiff was removed from flight training in November 2001.

After his removal from flight training, plaintiff continued his service in the Navy until he voluntarily resigned from active duty in September 2003. On August 6, 2004, plaintiff petitioned the Board for Corrections of Naval Records ("BCNR") to review his allegation that the Navy committed a procedural error that resulted in his removal from flight training. Plaintiff requested correction of his military records to reflect that he had completed the requisite flight training or, in the alternative, to order his return to active duty and reinstatement to flight training. After carefully considering plaintiff's petition, personnel record, and an advisory opinion from the Director of the Aviation Officer Distribution Division for the Navy, the BCNR denied his request for relief.

Plaintiff subsequently filed a complaint with this Court and asserts that the Court has subject matter jurisdiction to review his allegation of procedural error during flight training. As a remedy, plaintiff seeks a declaratory judgment from the Court directing the Navy to reinstate him to flight status or flight training, order that his records reflect the same, and order that plaintiff be paid back pay for the lost time on flight status.

Defendant files this motion and asks the Court to dismiss plaintiff's complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, to enter judgment upon the administrative record for defendant in accordance with RCFC 52.1.

## QUESTIONS PRESENTED

(1) Whether plaintiff has stated a claim upon which this Court can assert subject matter jurisdiction.

(2) Whether defendant is entitled to judgment upon the administrative record where plaintiff has failed to show that the BCNR denial of relief was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

## SUMMARY OF ARGUMENT

In this action, plaintiff seeks to challenge the Navy's determination to remove from flight training for poor overall performance. Plaintiff argues that the Navy failed to following its own regulations prior to removing plaintiff from flight training. Plaintiff's allegations raise non-justiciable issues and, therefore, this case should be dismissed for failing to state a claim upon which this Court can grant relief. In the alternative, the BCNR's decision is supported by substantial evidence and the Court should grant defendant's motion for judgment upon the administrative record.

## STATEMENT OF FACTS

Plaintiff enlisted in the Navy on August 3, 1999. AR, Tab 1, pp. 1-6. After successfully completing Officer Candidate School, plaintiff began flight training. AR, Tab 1, p. 7. Flight training consists of four phases: (1) aviation indoctrination; (2) primary; (3) intermediate; and (4) advanced. AR, Tab 1, p .8. Each phase of flight training has multiple stages that serve as milestones that flight students must reach and successfully complete before advancing onto the next stage. Id. To successfully complete a stage, a flight student must pass each training flight within the particular stage. Id. To successfully complete a phase, a flight student must completes all of the stages within that phase. At the conclusion of initial indoctrination flight

training phase, plaintiff achieved a Naval Standard Score ("NSS") of 59 and moved onto primary phase of flight training. AR, Tab 1, p. 8.

Plaintiff began the primary phase of flight training on August 18, 2000. Id. On August 31, 2001, shortly after his arrival at the primary phase of training, plaintiff was advised and counseled on his responsibilities as a student in flight training for the Navy.[1] AR, Tab 1, p. 9. Plaintiff's personnel record demonstrates that he consistently performed below standard, was a below average student throughout all phases of training, and he performed especially poorly during the multi-engine syllabus of the advanced phase. AR, Tab 1, pp. 8 & 10-15.

On July 23, 2001, during this last phase of flight training, plaintiff was identified as mid-stage marginal after completion of the first seven graded events and his grade average for the seven events was 2.978, below the squadron marginal cut off grade average of 3.019.2. AR, Tab 1, p. 12. Despite his low average, plaintiff was counseled about his deficiencies, given two extra training flights, and permitted to continue with training. Id

On August 6, 2001, plaintiff was counseled again for mid-marginal performance after completing 12 training stages during the final training phase because his average score was 2.978 and, therefore, below the squadron marginal cut off average score of 2.982. AR, Tab 1, p. 13.

---

1 The Naval Aviation Training Advisor Program was established as a benefit for the student and it assigned an advisor to each student as the first link in the chain of command between the student and the training cadres. Students were specifically responsible for several affirmative duties, including: informing the advisor of any conflicts that could affect training; informing the advisor of the student's progress in the syllabus each week; notifying the advisor of scheduled training jacket reviews within 5 days after completion of each syllabus event; and, immediately notifying the advisor if a marginal or unsatisfactory event occurred, either flight or academic problem. AR, Tab 1, p. 9.

2 Naval student aviators receive an average score after each phase and stage of training that is then compared to the squadron marginal average cut off score.

Plaintiff then began the next flight training stage in the final training phase, Radio Instruments ("RI"), and was rated as mid-stage marginal for two of the training flights, RI-15 and RI-24. AR, Tab pp. 14-16. Plaintiff's score for training flight RI-15 was 3.008, which was below the squadron marginal cutoff score of 3.026. Id. Plaintiff was not counseled for his mid-marginal performance for training flight RI-15. However, after failing training flight RI-24, plaintiff was counseled on his poor performance and the training cadre recommend that he receive two extra training flights, which occurred on September 26 and October 1, 2001. AR, Tab 1, pp. 17-22. On October 4, 2001, plaintiff failed training flight RI-26. AR, Tab 1, p. 23. During this training flight, plaintiff committed numerous errors and the training cadre counseled on his deficiencies and weaknesses. AR, Tab 1, pp. 23-25. Plaintiff received another unsatisfactory notice on October 5, 2001 and was subsequently counseled. Id.

Due to his continued mid-marginal performance scores, plaintiff was notified that a Progress Review Board ("PRB") would review his performance and recommend either retention or removal. AR, Tab 1, pp. 26-27. The PRB convened on October 9, 2001, and, after reviewing plaintiff's training records and overall performance, recommended that plaintiff be retained in the program and awarded two more extra training flights. Id. The PRB's recommendations, along with plaintiff's training records, were forwarded to the Training Wing Four commanding officer on October 11, 2001. Id. After careful consideration of all the relevant information, plaintiff's commanding officer disapproved the recommendations of the PRB, recommended that plaintiff be removed from the training program, and specifically found that:

> ENS Blankenship is a very motivated professional who has given his best effort to meet the standard. However, he is currently at a NSS of 23.1 with only 7 events to go to finish Advanced Phase. He currently needs 7 net above averages to meet the minimum waiver standard of less than 2.0 std deviation (NSS 30) to

> get his wings. Given his performance to date I have 100% confidence that he would not be able to finish within the standard.

Id.

The commanding officer's recommendation to remove plaintiff from flight training was forwarded to the determining authority, the Commodore of Training Wing Four, who reviewed the PRB's recommendations, the commander officers's recommendation, and plaintiff's training record before finding that: "Concur with CO. SNA [Student Naval Aviator] is too far behind at this point to consider it reasonable to meet even the minimum standards." AR, Tab 1, p. 27.

On November 6, 2001, plaintiff submitted a request for reconsideration of his removal from flight training to the Chief of Naval Air Training. AR, Tab 1, pp. 28-29. On November 13, 2001, plaintiff submitted a formal memorandum in which he argued that his mid-stage marginal status was due to the training cadres' failure to counsel him immediately after failing training flight RI-15. AR, Tab, pp. 30-31.

Before the Chief of Naval Air Training reviewed and responded to plaintiff's request for reconsideration, a second administrative review board was convened to review the decision to remove plaintiff from flight training. AR, Tab 1, pp. 34-35. This Training Review Board ("TRB"), which was comprised of eight officers, convened on November 19, 2001, and reviewed plaintiff's training records and specifically considered his November 13, 2001 request for reconsideration. Id. The TRB concluded that plaintiff should have been informed and counseled about his marginal performance after the Radio Instruments 15 training flight. Id. Additionally, the TRB found that the failure to counsel plaintiff was likely due to late completion of grading sheets, confusion from the September 11, 2001 attacks, and the temporary stand down of the command that resulted thereafter. Id. The TRB did not credit plaintiff's

assertion that he was unaware of his poor performance and noted the trend of below average performance leading up to his two failed flights and his discussion of low grades just before the Radio Instruments 9 training flight. Id. The TRB concluded that plaintiff's scores were so low that he could not have raised them to the minimum NSS of 30.0 required for waiver and graduation if retained in the program and voted unanimously (8-0) that his training was complete and, therefore, recommended his removal from flight training. Id. Finally, the TRB found that the plaintiff's lack of counseling made no appreciable effect on his ability to fly an aircraft in a satisfactory manner. Id.

On December 8, 2001, plaintiff was arrested and charged for drunk and disorderly conduct in Austin, Texas after he damaged a chair, a lamp, and a wall in a local hotel. AR38-41. All charges were dismissed after plaintiff paid restitution for the damages and wrote a letter of apology to the hotel. Id. On June 3, 2002, the Navy charged plaintiff with offenses under the Uniform Code of Military Justice ("UCMJ") for his December 8, 2001 misconduct. AR42-44. The formal charges were dismissed, but plaintiff was given a verbal reprimand and ordered to provide a written apology, which he submitted on June 4, 2002. Id. After learning of plaintiff's misconduct, the Commodore, acting pursuant to CNATRAINST 1500.4F, removed plaintiff from any further consideration for returning to flight training due to his "un-officer like behavior" on June 3, 2002. AR, Tab, p. 27.

On December 19, 2001, the Chief of Naval Air Training reviewed plaintiff's request for reconsideration and, after careful consideration of his entire personnel file, to include his misconduct in Austin, Texas, the Chief of Staff concurred with the TRB's recommendation to remove Mr. Blankenship from Navy flight training. AR, Tab, p. 28. At his request, plaintiff was

subsequently re-designated as a Surface Warfare Officer and transferred from flight training. AR, Tab 1, pp. 45-48.

On June 26, 2002, the Navy formally responded to plaintiff's November 13, 2001 request for relief and informed him that the Chief of Naval Air Training, Rear Admiral Boyington, concluded that his removal from flight training was appropriate in light of plaintiff's overall flight performance and his misconduct. AR, Tab, pp. 49-50.

On September 19, 2002, plaintiff's father, Mr. Malcolm B. Blankenship, Jr., informed the Navy that plaintiff had the chance to secure a flight position in the North Carolina Air National Guard to fly C-130s so long as he either received "wings" from the Navy or was placed back into the Navy's flight training program. AR, Tab, p. 51-53. The Navy responded formally on October 17, 2002, and explained that in light of Mr. Blankenship's academic standing and flight performance and the high standards required for naval aviators, the Navy could not, in good conscience, return Mr. Blankenship to flight status or award him "wings" to enable a transfer to the Air National Guard. AR, Tab, p. 53.

Plaintiff successfully re-designated as a Surface Warfare Officer and served as a carrier airborne Combat Information Center (CIC) Officer onboard the USS Enterprise until he voluntarily resigned his commission and received an honorable discharge on September 30, 2003. AR, Tab, p. 54.

On August 6, 2004, plaintiff completed an application for correction of his military records and asked the office of United States Senator Elizabeth Dole to submit it on his behalf to the BCNR. AR, Tab, pp. 55-58..

The BCNR requested an advisory opinion from the Director, Aviation Officer Distribution Division for the Navy, who maintained plaintiff's training records. On January 11,

2005, the Director issued an advisory opinion which specifically addressed plaintiff's allegations of error in the following manner:

> ALTJG Blankenship is requesting to be designated a Naval Aviator **having not successfully completed all phases of training** and be awarded Naval Aviator wings. While in the latter portion of the Advanced Stage of the multi-engine syllabus, LTJG Blankenship was removed from flight training because he was unable to master the procedures and basic air work skills required to safely fly the aircraft. LTJG Blankenship's accumulative flight training grade for the Advanced multi-engine syllabus at the time of his removal from training placed him in the bottom one percent of his peers in training, well below the minimum expected for graduation. For these reasons in addition to a pattern of declining performance in the Advanced Stages of flight training, LTJG Blankenship was not afforded extra training flights to improve his performance. The purpose of training flights is to focus on remediation of specific performance problems, not overall declining performance. LTJG Blankenship's overall below average performance did not justify additional training flights and he subsequently was removed from the flight training program.
>
> Awarding LTJG Blankenship Navy pilot wings solely for the purpose of an Interservice Transfer with follow-on C-130 flight training in the North Carolina National Guard is inappropriate and would severely compromise the high standards set by Naval Air Training.

AR, Tab, pp. 59-60. (citations excluded and emphasis added).

On December 13, 2005, after carefully considering the record, which included plaintiff's training record, the afore-mentioned advisory opinion from the Director, plaintiff's submissions, the BCNR found that the evidence submitted was insufficient to establish the existence of probable material error and injustice and, therefore, denied plaintiff's request. AR, Tab, pp. 61-73. Mr. Blankenship filed a complaint with this Court on January 22, 2008.

## ARGUMENT

### I. The Complaint Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted Because The Relief Requested Is Non-justiciable.

**A. Standard of Review for Dismissal**

A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996). In deciding such a motion, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. See Scheuer, 416 U.S. at 236. The court need not accept legal conclusions cast in the form of factual allegations. Lowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**B. Non-Justiciability**

This Court may not review the Navy's substantive military personnel decision to remove a student naval aviator from aviation training. This issue is non-justiciable. An issue is justiciable "if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988). In this case, plaintiff is asking this Court to reinstate him into flight status, a status for which he never fully qualified, or to order him back onto active duty to again receive instruction at the Naval Flight School. Thus, plaintiff is asking this Court to qualify him as a Navy combat pilot, and substitute its judgment for that of the professional flight instructors who found his performance below acceptable standards.

"The complex, subtle, and professional decision as to the composition, training, equipping, and control of a military force are essentially professional military judgments . . . and

the ultimate responsibility for these decisions is appropriately vested in the branches of the government which are periodically subject to electoral accountability." Gilligan v. Morgan, 413 U.S. 1, 10 (1973). The ultimate responsibility for the determination of plaintiff's qualifications as a naval aviator was expressly vested by Congress in the Secretary of the Navy. 10 U.S.C. § 6021 and § 6024. In this case the Commanding Officer of Training Wing Four, was delegated the responsibility of deciding when a student was not capable of serving as a naval aviator.

Paragraph 804 of CNATRAINST 1500.4F reads:

> 804. TERMINATION OF FLIGHT TRAINING. Authority to terminate flight training because of unsatisfactory performance is vested in the Traing Four Wing Commander and Commanding Officer, NAVAVSCOLSCOM, except in the case of international students. This authority may not be further delegated.

CNATRAINST 1500.4F, paragraph 804 (18 May 1999).

"Courts normally defer to the specialized experience of military decision makers on substantive personnel decisions by the service secretary." Haselrig v. United States, 53 Fed. Cl. 111, 121 (1992). The Supreme Court of the United States recognized this principle in 1953:

> Judges are not given the task of running the Army. The responsibility for setting up channels through which grievances can be considered and fairly settled rests upon Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere with judicial matters.

Orloff v. Willoughby, 345 U.S. 83, 93-93 (1953).

This Court has recognized that there are "thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of the court to wrestle with." Voge v. United States, 844 F.2d at 780. The Court's conclusions that a service secretary's decision regarding military affairs are

unquestionably beyond the competence of the judiciary to review have included such issues as: the revision of duty orders by a court; the merits of the Air Force's decision to release an officer from active duty; the review and ranking of officer records for promotion; interjection into the promotion process; determining who is fit or unfit for military duty; and recognition of strong policies that compel the court to allow the widest possible latitude to the armed forces in the administration of personnel matters. Adkins v. United States, 68 F.2d 1317, 1322-1323 (Fed.Cir. 1996).

Plaintiff argues that his instructors are to blame for his failure to successfully complete Naval Flight School and claims he was "shocked" to learn of his academic standing. Compl. ¶ 15. Though it strains reason to believe a student naval aviator of almost one and a half years would not know his current academic standing, especially in the highly competitive environment of Naval Flight School, plaintiff argues the Navy's failure to provide him with a counseling warning of his marginal status after a flight failure now permits this Court to review what clearly was a substantive military personnel decision concerning the training of prospective combat pilots.

It is true that "the military is bound to follow its own procedural regulations if it chooses to implement some. But the utility of the distinction between procedural and substantive matters in assessing a court's ability to review military decisions should not be overemphasized." United States v. Murphy, 993 F.2d 871, 872 (Fed.Cir. 1993). In US v. Murphy, the United States Court of Appeals for the Federal Circuit determined that the Air Force's decision to release a reserve officer from active duty was non-justiciable, despite the fact that the release was based upon an erroneous record. The Federal Circuit also overturned the lower court's decision to return Murphy to active duty.

A similar analysis holds true in the case now before this Court. Mr. Blankenship alleges the Navy failed to notify him of his impending academic failure, in accordance with its own administrative instruction, and that this violation entitles him to flight status or a return to active duty. Compl. ¶ 17. Even if true, and for the purpose of our 12(b)(6) motion we accept this as true, this fact does not transform an otherwise non-justiciable action into a reviewable one.

The training of combat pilots to fly, fight, and defend this country was explicitly vested by Congress in the military. 10 U.S.C. § 6021 and § 6024. This Court does not have the institutional competence to make the substantive determination that plaintiff is deserving of aviator "wings" or to return him to active duty for a second chance at flight school, especially seven years after his removal. There can be no real debate that plaintiff's removal from naval aviation training was a substantive military personnel decision. Defendant recognizes that "a claim of procedural violations may present a justiciable controversy because the test or standards against which the court measures the military's actions are inherent." Adkins v. United States, 68 F.3d at 1321. But, here there are no tests or standards against which this Court can measure the actions of the Training Wing Four commanding officer's decision to remove Mr. Blankenship from training because of his poor performance. Even if this Court finds that Mr. Blankenship's allegations of procedural errors are true, the action remains nonjusticiable just as the Federal Circuit determined in Murphy and Mr. Blankenship's petition must be dismissed for failure to state a claim upon which relief can be granted.

## II. In the Alternative, Judgment On the Administrative Record Should Be Granted to Defendant

As we explain below, the BCNR's decision to deny plaintiff's request to change his military records was not arbitrary, capricious, contrary to law or regulation, or unsupported by

substantial evidence. Furthermore, it was reasonable for the Navy to initially remove plaintiff from flight training based upon his continued failure to meet the required performance standards. Finally, the administrative record demonstrates that any procedural errors committed by the Navy were harmless. For these reasons, the Court should grant judgment upon the administrative record in favor of defendant.

**A. Standard of Review**

RCFC 52.1 requires the Court to determine whether, based upon the administrative record, the challenged decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law. Bannum, Inc.v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005); Heisigv. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). See also Cole v. United States, 26 Cl. Ct. 1018, 1023 (1992) (in cases where the Court is reviewing actions of a service board for correction of military records, the standard is "whether defendant's decision not to change the records . . . was arbitrary, capricious, contrary to law or unsupported by substantial evidence.") When reviewing military personnel matters, the Court's review is limited: "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979). Indeed, before the Court will overturn the military tribunal's decision, "plaintiff must show by cogent and clearly convincing evidence . . . a material legal error or injustice in the correction board proceeding . . . ." Chayra v. United States, 23 Cl. Ct. 172, 178 (1991). It is equally well settled that the plaintiff must "overcome the presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Chayra, at 178 (citing Sanders, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979)).

Additionally, "[w]hile the court might disagree with the [military tribunal's] decision, it cannot substitute its own judgment for the [tribunal's] if reasonable minds could reach differing resolutions of a disputed fact." Chayra, at 178. In Curry v. United States, 221 Ct. Cl. 741, 609 F.2d 980, 983 (1979), the Court of Claims stated, "We cannot interfere in the business of the military unless there is a violation of statute or regulation or abuse of discretion amounting to legal error." Id. (citing Boyd v. United States, 207 Ct. Cl. 1 (1979), cert. denied, 424 U.S. 831 (1974).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Thus, because this Court does not sit as a "super correction board," Skinner v. United States, 219 Ct. Cl. 322, 330-31, 594 F.2d 824, 829-830 (1979), where reasonable minds might reach different conclusions on the evidence, this Court will not substitute its judgment for that of the board's. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.1986).

**B. The BCNR's Decision Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Law Or Regulation.**

Plaintiff argues that the BCNR's action was arbitrary, capricious, and unsupported by substantial evidence. Compl. at p.4. In support of this contention, plaintiff first asserts that the BCNR "did not make a rational connection between the facts found and the choice made." Compl. &33. Although not clear, it appears that plaintiff also takes issue with the fact that the BCNR relied upon an advisory opinion from the Navy Personnel Command when it made its determination on plaintiff's application for correction of his military records. ¶ 34. Next, plaintiff impliedly argues that the Navy's decision to remove plaintiff from flight training was

based solely on his one failed training flight and attempts to create the appearance that there was an undue delay from the "first sign of trouble, and not at the end of the phase as was the case with Plaintiff." ¶ 35. Finally, plaintiff argues that the Navy failed to allow him to "benefit from the procedural safeguards in place for student aviators. It was administrative error that he was not identified for remedial training earlier in the phase." ¶ 37. As will be shown below, plaintiff's contentions are unsupported in the record, factually incorrect, and wholly without merit. Accordingly, we ask that the Court grant our motion for judgment upon the administrative record and dismiss plaintiff's complaint with prejudice.

Plaintiff's first argument, that the BCNR did not make a rational connection between the facts found and the choice made, is wholly without merit and must be disregarded. We note from the outset that plaintiff does not allege that the BCNR failed to consider any particular evidence, but simply challenges the board's decision. The record amply shows that the BCNR considered plaintiff's entire military record, which consists of his Official Military Personnel File ("OMPF"), his training records, and plaintiff's submissions. AR, Tab 1, p. 60. The facts relied upon by the BCNR show an 18-month record of repeated poor performance by plaintiff despite continued effort and assistance provided by the Navy's flight training cadre. AR, Tab 2, pp. 73 - 263.[3] The decision to remove plaintiff was based on his demonstrated poor performance, for which he was first counseled on July 18, 2001. AR, Tab 1, p. 11. The BCNR accepted the following recommendation from the Director of the Navy's Aviation Officer Distribution Division:

> While in the latter portion of the Advanced Stage of the multi-engine syllabus, LTJG Blankenship was removed from flight training because he

---

[3] The record also shows that after he filed a request for reconsideration of his removal from flight training, plaintiff engaged in criminal misconduct in Austin Texas. AR, Tab 1, pp. 36-38.

> was unable to master the procedures and basic air work skills required to safely fly the aircraft. LTJG Blankenship's accumulative flight training grade for the Advanced multi-engine syllabus at the time of his removal from training placed him in the bottom one percent of his peers in training, well below the minimum expected for graduation. For these reasons in addition to a pattern of declining performance in the Advanced Stages of flight training, LTJG Blankenship was not afforded extra training flights to improve his performance. The purpose of training flights is to focus on remediation of specific performance problems, not overall declining performance. LTJG Blankenship's overall below average performance did not justify additional training flights and he subsequently was removed from the flight training program.

AR, Tab 1, p. 62.

By accepting the recommendation of the Director, the BCNR explained the rational connection between the facts and the decision to remove plaintiff from flight training. Based on these facts, the BCNR reasonably concluded the decision to remove plaintiff from flight training was not an error or an injustice.

The Court should not substitute its judgment for that of the BCNR, when the BCNR's decision is reasonable. Wronke, 787 F.2d at 1576; Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 814 (1979). Accordingly, judgment upon the administrative record is, therefore, appropriate.

Although not expressly articulated, plaintiff appears to argue that it was unreasonable for the BCNR to consider an advisory opinion from the Navy Personnel Command. ¶ 37. We are unaware of any rule, regulation, statute, or case law that supports the proposition that it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law for the BCNR to consider evidence in the record before it. Indeed, the BCNR would have acted unreasonably if it did not consider this evidence.

Plaintiff next contends that the Navy failed to follow its own regulation and provide sufficient notice to plaintiff that his performance was marginal. Compl. ¶¶ 33-38. Plaintiff also asserts that the Navy's decision to remove him from flight training was because he would not have "time to bring his scores up to passing." Compl. ¶ 35. From the outset, we note that the record clearly shows that plaintiff was counseled, formally and informally, throughout the duration of his flight training. See, AR, Tab 2, pp. 73-263. The record also shows that plaintiff was not removed from flight training based upon one failed training flight, rather the decision was based upon his entire training record, which demonstrated that plaintiff reached a point in his training where he could no longer achieve the necessary 30 qualification points. AR, Tab 1, p. 27. Indeed, time was not of the essence, as plaintiff claims, but the determining factor, prior to his misconduct, was that there were not enough stages for plaintiff to accumulate the required points to successfully complete the program. Id.

Furthermore, the implied contention that plaintiff was unaware of his poor performance until he was belatedly so advised after training flight RI-24 is entirely without merit because the record demonstrates that plaintiff was formally counseled as early as July 18, 2001 for his marginal scores and the training cadre expressed concern that this was a "trend developing" in his overall performance. AR, Tab 1, p. 11. Thus, plaintiff's factual assertions are not supported by the record. Therefore, plaintiff cannot prove that the Navy's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or regulation and his complaint must, accordingly, be dismissed.

### C. The Navy's Failure To Counsel Plaintiff After His Mid-Stage Marginal Performance On September 7, 2001 Was Harmless

Any procedural error committed by the Navy when it failed to notify or counsel plaintiff his mid-stage marginal status on September 7, 2001 was harmless error.

"The military is bound to follow its own procedural regulations if it chooses to implement some. But the utility of the distinction between procedural and substantive matters in assessing a court's ability to review military decisions should not be overemphasized." United States v. Murphy, 993 F.2d 871, 872 (Fed.Cir. 1993).

"But an Agency's strict compliance with its own procedural requirements is not required where error in not following regulations is deemed harmless." Wagner v. United States, 365 F.3d 1358 (Fed. Cir. 2004). In this case, even if we assume, for purposes of argument, that the Navy failed to follow its own procedural regulations, any error that might have flowed from such a failure is harmless and plaintiff's claim should still be dismissed with prejudice.

Plaintiff's academic and flight performance were so poor he could not have earned wings even if he had been notified on September 7, 2001 of mid-stage marginal status. See, AR, Tab 1, pp. 8 - 10. Indeed, notification of mid-stage marginal status granted plaintiff no mandatory relief because the awarding of extra flights or further counseling is discretionary. Additionally, plaintiff's subsequent misconduct would have caused his formal removal from the flight training program and removal from flight status irrespective of his academic performance. Lastly, plaintiff's claim of harm is belied by the fact that he was responsible for reviewing his training record with his

advisor as required under the NATAP Program rules and, therefore, this failure to meet these responsibilities was a contributing factor to this procedural oversight.

**1. The Granting of Extra Training Flights and Instruction Was Discretionary Not Mandatory.**

Plaintiff argues that the Navy unreasonably failed to afford him extra training flights. Paragraph 718 of CNATRAINST 1500.4F defines students identified as marginal. No language in the instruction mandates extra flights or counseling as remedial actions; they are simply an option available to an instructor. The purpose of remedial flights, when deemed warranted and appropriate, is to target any specific problems with the student's performance. This discretionary function is further highlighted in paragraph 803(b): "Extra instruction is awarded only to those students exhibiting the capability to satisfactorily achieve curriculum criteria." Id. at para 803(b), VIII-3.

Plaintiff claims, pursuant to CNATRAINST 1500.4F, that he was entitled to extra training flights and the Navy's failure to notify him of his mid-stage marginal status and subsequent lack of extra training flights prejudiced him. Compl. ¶¶ 36 - 37. However, the "Flowchart for the Administration of Unsatisfactory Events" in CNATRANINST 1500.4F indicates a student similarly situated to plaintiff, that is a student with three unsatisfactory flights in the final phase, should be referred to a PRB for possible removal from flight training. Id. at VIII–13. Thus, even if plaintiff is correct, that the Navy did not properly notify him of his mid-stage marginal status, this failure actually resulted in an additional three weeks of training for plaintiff that he may not have otherwise received. There can be no real debate that the Navy's alleged failure to notify and

formally counsel plaintiff of his mid-stage marginal status on September 7, 2001, which provided him more time to improve his grades before being processed for removal from flight training, does not constitute an injustice and was, therefore, harmless.

**2. Plaintiff's Academic and Flight Performance Was So Poor He Could Not Have Successfully Completed Flight Training.**

Plaintiff's training records reflect a student naval aviator with average to below average grades through the first three phases of training. AR, Tab 1, p. 8. His performance dropped to the bottom 1% of his class when he began flying a multi-engine aircraft in the final phase. Id. The record shows that plaintiff was classified as end-of-stage marginal as of August 6, 2001. AR, Tab 1, p. 10. The applicable Navy regulation, CNATRAINST 1500.4F, states:

> End of Stage Marginal performance shall be identified to focus attention on students whose performance, though technically passing, is substandard and to determine if further training is or is not warranted.

CNATRAINST 1500.4F, para. 709, VII-12. Thus, plaintiff's performance was already substandard prior to his flying the RI-15 training flight on September 7, 2001. Plaintiff argues that had the instructor notified him of his poor performance and mid-marginal status prior to September 7, 2001, then he would have had time to improve his performance and complete flight training. Compl. ¶ 37. Contrary to plaintiff's assertion, the record shows that plaintiff was counseled about his poor overall performance as early as July 18, 2001 and given extra training flights. AR, Tab 1, p. 11.

Moreover, plaintiff's overall performance in all phases of flight training demonstrates that even if plaintiff was notified (again), counseled (again) and afforded extra training flights (again), his overall performance record indicates he would have failed again. See, AR, Tab 1, p.

27. Plaintiff needed a minimum NSS of 30.0 to even be considered for a waiver for graduation. Id. The minimum passing NSS is 35.0. Id. During the three-week window between training flights RI-15 and RI-24, plaintiff passed all of his events, but none of his grades were above average. AR, Tab 2, pp. 252-263. Plaintiff's commanding officer noted that he would need above average scores on the final seven events in the Radio Instrument Stage to just meet the minimum waiver NSS of 30.0. AR, Tab 1, p. 27. The commanding officer correctly concluded, based upon his 18-month training record, that plaintiff could not change into a different pilot and achieve this goal and properly recommended removal. Thus, any procedural error made by the Navy did not result in any harm, injustice or prejudice to plaintiff and therefore constitutes harmless error.

### 3. Plaintiff Would Have Been Removed From Flight Training Based Upon His December 2001 Misconduct.

Irrespective of his academic and flight performance, plaintiff's December 2001 criminal misconduct would have resulted in his removal from flight training. Officers in the Navy are required to conform to the following standard:

> 814. Failure to Demonstrate Officer-Like Qualities. Naval aviators are, first and foremost, Naval officers, who must possess strong moral and leadership traits. Failure to possess and develop these traits by any SNA constitutes unsatisfactory performance for which an individual may be attrited from flight training by the Training Wing Commander, or Commanding Officer NAVAVSCOLSCOM, utilizing the procedures set forth in paragraph 816.
>
> a. The Training Wing Commander or Commanding Officer NAVANSCOLSCOM may terminate officers who fail to exhibit potential for becoming a military aviator.
>
> b. The following specific items are a basis for finding that an individual is not aviation material and should not be continued in flight training. In addition to those items listed, any act or omission on the part of an SNA that in the opinion of the Training Wing Commander or Commanding Officer, NAVANVSCOLSCOM

> is evidence that a moral and leadership shortcoming exists, may serve as a reason for removal.
>
> (1) Commission of any offense under the Uniform Code of Military Justice (UCMJ) regardless of whether or not the evidence to support the allegation is admissible in courts martial or whether or not a military courts martial has jurisdiction to try the offense.

CNATRAINST 1500.4F, para. 815, VIII 8-9.

The Training Wing Four Commander, after learning of plaintiff's misconduct in an Austin, Texas hotel and his subsequent arrest, determined that plaintiff should be removed from any further consideration for being returned to flight status. AR, Tab 1, p. 27. In light of plaintiff's misconduct resulting in his disqualification from being reinstated for further flight training, the Navy's alleged late notification of mid-state margin status and subsequent failure to formally counsel plaintiff became moot and constitutes harmless error as it did not prejudice plaintiff.

**4. Mr. Blankenship Had An Affirmative Responsibility to Review His Training Records With The Training Cadre.**

Plaintiff argues that the procedural error was caused by the training cadre's failure to review his training records and notify him of his mid-stage marginal status. Despite his assertions, the record demonstrates that plaintiff was advised of his responsibilities as a student upon arrival at flight training. Indeed, plaintiff acknowledged these responsibilities and signed a form that explained those responsibilities. AR, Tab 1, p. 10. Plaintiff was assigned a specific instructor to serve as a first link with the chain of command and the training cadre and plaintiff was advised that he could approach and work with this instructor so as to ensure that he successfully completed flight training. Id. Plaintiff now attempts to abdicate responsibility for his poor performance and create the impression that he simply stuck his head in the sand at the

conclusion of each training flight and was not aware of his poor performance. Plaintiff's total disregard for his affirmative responsibility to monitor his own training records makes any error on the part of the Navy harmless.

**CONCLUSION**

Based on the foregoing, this Court should grant judgment upon the administrative record for the defendant.

Respectfully submitted,

GREGORY G. KATSAS
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Bryant G. Snee by Marty Hockey
BRYANT G. SNEE
Deputy Director

/s/ Christopher L. Krafchek
CHRISTOPHER L. KRAFCHEK
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-0041
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
LCDR MARC S. BREWEN
Office of the Judge Advocate General
General Litigation (Code 14)
1322 Patterson Ave, SE Suite 3000
Washington Navy Yard, DC 20374-5066
Tel: (202) 685-5441
Fax: (202) 685-5472

May 16, 2008

CERTIFICATE OF FILING

I hereby certify that on this 16th day of May, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Christopher L. Krafchek