IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MALCOLM B. BLANKENSHIP III,

*Plaintiff*,

vs.

THE UNITED STATES OF AMERICA,

*Defendant*

No. 08-48 C

(Chief Judge Damich)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (hereinafter RCFC), the Plaintiff hereby responds to the United States' motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff further requests this honorable Court grant the relief requested in his original complaint. This Court should deny the United States' request for judgment upon the administrative record, pursuant to Rule 56.1 of the RCFC. In support of his response, Plaintiff relies upon his previous pleadings with this Court, Defendant's brief, the following brief, both parties statement of the facts, and the administrative record previously filed with this honorable Court.

**PLANTIFF'S RESPONSE**

I. The Defendant's first issue erroneously concludes the Plaintiff's issue is non-justiciable. As the Navy failed to follow their own procedural requirements, the issue is justiciable before the Court.

II. The Board of Corrections for Naval Records denial of relief was arbitrary, capricious, and unsupported by substantial evidence, making the Defendant's motion for judgment on the administrative record improper in this case.

## STATEMENT OF THE CASE

Plaintiff entered active duty in the United States Navy on October 17, 1999. AR, Tab 1, pp. 1-6. After successfully completing Officer Candidate School on January 3, 2000, he entered Naval Flight School. AR, Tab 1, p. 7. The program lasts approximately one and a half years, and began in November 23, 2000.

Naval Aviator Training consists of flight training events in the basic, intermediate, and advanced phase. AR, Tab 1, p. 8. After successfully completing a flight, a grade of "up" (satisfactory) or "down" (unsatisfactory) is awarded. To successfully complete a stage, a flight student must pass each training flight within the particular stage. Id.

Plaintiff was successful in every training flight through the basic and intermediate stages, and was given an "up" on all flights. His only unsuccessful flights, receiving a "down" rating, were in the final phase of training. Plaintiff received down ratings on flights RI-15 and RI-24, performed during the Radio Instruments phase. AR, Tab 1, pp. 14-16. Plaintiff's score for training flight RI-15 was 3.008, which was below the squadron marginal cutoff score of 3.026. Id. Plaintiff was not counseled for his mid-marginal performance after flight RI-15. It was only after receiving a down rating on RI-24 that Plaintiff was counseled on his deficiencies, told he was mid-stage marginal, awarded two extra training flights, and permitted to continue with training. AR, Tab 1, pp. 17-22.

On September 26, 2001, Plaintiff successfully completed extra training flight RI-25, and on October 1st, failed RI-26. He was counseled again at this time, and referred to a Student Progress Disposition Board (PRB). AR, Tab 1, pp. 23-25. As Defendant notes, the PRB was convened on October 9, 2001, and after reviewing Plaintiff's records and overall performance,

recommended that Plaintiff be retained in the program and awarded two more training flights. AR, Tab 1, pp. 26-27. The PRB's recommendations, along with Plaintiff's records were forwarded to the Training Wing Four commanding officer on October 11, 2001. Id. The commanding officer disapproved the recommendations of the PRB, and recommended that Plaintiff be removed from the training program. He specifically found that:

> ENS Blankenship is a very motivated professional who has given his best effort to meet the standard. However, he is currently at a NSS of 23.1 with only 7 events to go to finish Advanced Phase. He currently needs 7 net above averages to meet the minimum waiver standard of less than 2.0 std deviation (NSS 30) to get his wings. Given his performance to date, I have 100% confidence that he would not be able to finish within the standard. Id.

The commanding officer's recommendation was forwarded to the Commodore of Training Wing Four, who reviewed all the information and concurred with removal from flight training. AR, Tab 1, p. 27.

On 20 October 2001, Plaintiff's name was released to the local Corpus Christi, Texas newspaper as recently receiving his wings after graduating from flight training.

On November 6, 2001, Plaintiff submitted a request for reconsideration of his removal from flight training to the Chief of Naval Air Training. AR, Tab 1, pp. 28-29. On November 13, 2001, Plaintiff submitted a formal memorandum in which he stated that his mid-stage marginal status was due to the training cadres' failure to counsel him immediately after failing training flight RI-15. AR, Tab, pp. 30-31.

Before the Chief of Naval Air Training reviewed and responded to plaintiff's request for reconsideration, a second administrative review board was convened pursuant to CNATRAINST 1500.4F to review the decision to remove Plaintiff from flight training. AR, Tab 1, pp. 34-35. This Training Review Board ("TRB"), which was comprised of eight officers, convened on

November 19, 2001, and reviewed Plaintiff's training records and specifically considered his November 13, 2001 request for reconsideration. Id. The TRB concluded that Plaintiff should have been informed and counseled about his marginal performance after the Radio Instruments 15 training flight. Id. Additionally, the TRB found that the failure to counsel Plaintiff was likely due to late completion of grading sheets, confusion from the September 11, 2001 attacks, and the temporary stand down of the command that resulted thereafter. Id. The TRB concluded that Plaintiff's scores were so low that he could not have raised them to the minimum NSS of 30.0 required for waiver and graduation if retained in the program and voted unanimously (8-0) that his training was complete and, therefore, recommended his removal from flight training. Id.

At his request, plaintiff was subsequently re-designated as a Surface Warfare Officer and transferred from flight training. AR, Tab 1, pp. 45-48. Plaintiff was successfully re-designated as a Surface Warfare Officer and served as a carrier airborne Combat Information Center (CIC) Officer onboard the USS Enterprise until he voluntarily resigned his commission and received an honorable discharge on September 30, 2003. AR, Tab 1, p. 54.

On August 6, 2004, Plaintiff completed an application for correction of his military records and asked the office of United States Senator Elizabeth Dole to submit it on his behalf to the BCNR. AR, Tab 1, pp. 55-58. On December 13, 2005, after carefully considering the record, which included Plaintiff's training record, the afore-mentioned advisory opinion from the Director, and Plaintiff's submissions, the BCNR found that the evidence submitted was insufficient to establish the existence of probable material error and injustice and, therefore, denied Plaintiff's request. Mr. Blankenship filed a complaint with this Court on January 22, 2008.

## ARGUMENT

## I. Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Must be Denied as the Defendant Improperly Characterized Plaintiff's Request as Non-Justiciable.

### A. Standard of Review for Dismissal under Rule 12(b)(6)

The Plaintiff accepts the standard of review articulated by Defendant, and emphasizes that the Court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996). In deciding such a motion, the Court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. See Scheuer, 416 U.S. at 236.

### B. Non-Justiciability

Defendant improperly argues that the Navy's military personnel decision to remove a student naval aviator from training is non-justiciable. Justiciability is distinct from jurisdiction; it depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." Baker v. Carr, 369 U.S. 186, 198 (1962). In Murphy v. United States, the Court of Appeals for the Federal Circuit opined, "accordingly, we have recognized that there are 'thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with.'" Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993). The Court emphasized that judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established "tests and standards" against which the court can measure his conduct. Unless such a test or standard is provided, courts must abstain. Id.

When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some. Sargisson v. United States, 913 F.2d 918, 921-922 (Fed. Cir. 1990). On procedural matters, the test or standard is inherent. A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to

exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard. Id.

In the case of Sargisson v. United States, the United States Court of Appeals for the Federal Circuit examined a decision by the Secretary of the Air Force to release Sargisson from active duty. Congress expressly authorized the Secretary of the Air Force to release reserve officers from active duty under 10 U.S.C. § 681(a) (1970): "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." The statute does not place any procedural or substantive limitations on the Secretary's discretion. 913 F.2d 918, 921. Nevertheless, once the Secretary promulgated regulations and instructions and made them the basis for Sargisson's release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all. See Vitarelli v. Seaton, 359 U.S. 535, 539, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959) ("Since . . . the Secretary gratuitously decided to give a reason, . . . he was obligated to conform to the procedural standards he had formulated . . . for the dismissal of employees on [those] grounds," citing Service v. Dulles, 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. Ct. 1152 (1957)); see also Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all . . .").

The reason for Sargisson's release from active duty was a reduction in manpower requirements. Air Force Regulation (AFR) 36-12 para. 71 (June 28, 1973) governed the release of reserve officers because of a strength reduction. It required the Secretary of the Air Force to "issue specific instructions governing the criteria and procedures to be utilized in effecting the reduction in strength." By way of implementation, the Secretary issued a Letter of Instructions convening a Reserve Officer Selection Board (ROSB) to review the performance records of all active duty reserve officers, align them in a relative order of merit using the best qualified method of selection, and recommend the least qualified for release from active duty. In convening this ROSB, the Secretary was also required to comply with section 266(a) of the United States Code, Title 10. See, e.g., Stewart v. United States, 222 Ct. Cl. 42, 611 F.2d 1356 (1979). Thus, the Claims Court had jurisdiction to determine whether the Air Force complied

with AFR 36-12 para. 71, the Letter of Instructions and 10 U.S.C. § 266(a) (1970) (amended 1981). Sargisson at 921-922.

The Sargisson Court went on to state:

> The Secretary's compliance with AFR 36-12 para. 71 and the Letter of Instructions is beyond the ken of judicial competence; it is nonjusticiable. The distinction between [nonjusticiability and lack of jurisdiction] is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." Id.

The Court reached this decision by finding that neither AFR 36-12 para. 71 nor the Letter of Instructions gave any "tests or standards" by which the Claims Court could determine whether the decision to release Sargisson from active duty was correct. Id.

Comparing the standard of Sargisson to the facts in the present case, Defendant correctly sites the authority of the Secretary of the Navy to maintain the Naval Aviator Training Program. Congress vested this power to the Naval Secretary under 10 U.S.C. §6021 and §6024. To implement the Naval Aviator Training Program, the Naval Secretary promulgated several instructions, which governing the type of training student aviators are to receive. With these instructions come a series of procedural safeguards that each student is entitled to while in training.

Naval Air Training Instruction 1500.4F (CNATRAINST 1500.4F) chapter one governs the training Plaintiff received. Paragraph 715 discusses "marginal performance," and the requirements placed on instructors for students who fall into this category. The paragraph states "Early identification of marginal performance is key to the determination of actions the command and student must take to improve student performance." Further, it states, "Students' grades shall be reviewed weekly to determine marginal performance."

Paragraph 718 of CNATRAINST 1500.4F states "The purpose of marginal designation is to highlight a student's trends, and apply practical steps to determine what actions are required to prevent unsatisfactory completion." A review of the marginal student's jacket is to be performed, with specific courses of action recommended to improve performance. The student is to be counseled about what he must do to successfully complete the program. Only at the end of

the special training, is the student recommended for continued training or referral to a training review board (TRB).

Plaintiff was counseled as being mid-stage marginal on July 23, 2001, after completion of seven events in the last phase of training. His counseling, however, was marked as "trend analysis only" and no corrective action was taken other than documenting his scores. AR, Tab 1, p. 12. Plaintiff was again counseled on August 6, 2001, as being end of stage marginal. Again, this counseling was marked as "trend analysis only" and no corrective action or extra training was awarded to Plaintiff. AR, Tab 1, p. 13.

Plaintiff was again below the average on flight RI-15, but was not counseled for his performance or afforded any extra training. His flight rating for RI-15 was an "up" and marked "complete," but was later calculated to be below the class average. AR, Tab 1, p. 14. It wasn't until Plaintiff received a "down" rating on flight RI-24 that he was counseled and awarded two extra flights for training. AR, Tab 1, p. 15. This counseling took place on September 24, 2001. Plaintiff received a second "down" rating on flight RI-26, and was counseled on October 5, 2001. He was again recommended for extra training, and to continue in the program. He was also referred to the Student Progress Disposition Board (PRB) at this time. In the remarks section for flight RI-26, it was noted that it was "very evident that Malcolm has the motivation and knowledge to make a good naval aviator. His knowledge of aim/far and limits was excellent. Needs practice putting it all together in a dynamic environment. Recommend 2 ET's and continue." AR, Tab 1, p. 24.

Plaintiff did not benefit from the purpose and safeguards in place for those receiving a marginal designation. Rather than receiving extra training and a plan of action to address his deficiencies back in July, Plaintiff did not benefit from extra training until October. He essentially given one chance to succeed, and when he did not successfully complete a training flight, he was referred to the PRB.

As stated above, when a student is identified as "marginal," a review of the student's jacket is to be performed, with specific courses of action recommended to improve performance. The student is to be counseled about what he must do to successfully complete the program. Only at the end of the special training, is the student recommended for continued training or

referral to a training review board (TRB). Plaintiff did not receive a specific course of action to improve his performance. He was not counseled on the seriousness of his scores, and the fact that he was in danger of not meeting graduation requirements. These procedural safeguards are in place for the success of the student aviator, and Plaintiff was not afforded a full and fair opportunity to complete his training. As this is a failure to follow established procedures, according to Sargisson, this Court is able to review the procedural actions of the Navy, and determine whether Plaintiff is entitled to relief.

In addition, the Training Review Board agreed that Plaintiff "should have been officially informed of his marginal performance after the RI-15 ride. This is an error by VT-31 that happened for many reasons… Regardless, it happened, and it was not noticed until his second down in stage." AR, Tab 1, p. 34. For the purposes of their motion to dismiss, Defendant also agrees that the Navy failed to follow their own regulations. By their admission, and the facts of the case, the failure of the Navy to follow their own regulations makes the relief requested by Plaintiff a justiciable issue.

**II. Defendant's Motion for Judgment Upon the Administrative Record Must be Denied as the Actions of the BCNR were Arbitrary, Capricious, and Unsupported by Substantial Evidence.**

The BCNR's decision to deny Plaintiff's request was arbitrary, capricious, and unsupported by substantial evidence. The procedural errors committed by the Navy were not harmless to Plaintiff, and the failure of the Navy to follow their own procedural regulations caused Plaintiff to be removed from flight training before having a chance to bring his scores up to average.

**A. Standard of Review**

As articulated by Defendant, RCFC 52.1 requires the Court to determine whether, based upon the administrative record, the challenged decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law. Bannum, Inc.v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005); Heisigv. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). When reviewing military personnel matters, the Court's review is limited: "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their

administration of personnel matters." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979). Indeed, before the Court will overturn the military tribunal's decision, "plaintiff must show by cogent and clearly convincing evidence . . . a material legal error or injustice in the correction board proceeding . . . ." Chayra v. United States, 23 Cl. Ct. 172, 178 (1991).

**B. Arbitrary, Capricious, and Unsupported by Substantial Evidence**

The BCNR's decision was arbitrary, capricious, and unsupported by substantial evidence, and did not make a rational connection between the facts found and the choice made, as required by law. The BCNR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." Yee v. United States, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

The BCNR relied on an advisory opinion from Navy Personnel Command in making its decision. The decision recommends not awarding Plaintiff his aviator wings due to unsuccessful completion of the program. The opinion stated that when Plaintiff was removed from training, his scores were below the cutoff. For this reason, Plaintiff was not afforded extra training flights to improve his performance. As this decision is a correct statement of the facts, it does not override the fact that Plaintiff did not have a chance to overcome his marginal designation with an individualized plan designed to correct his deficiencies and allow him to graduate.

As stated in paragraphs 16-18, the purpose of a marginal designation is to help the student aviator identify steps needed to improve performance. This designation is to be given at the first sign of trouble, and not at the end of the phase as was the case with Plaintiff. The purpose, therefore, is to retain aviators, rather than attrite. Plaintiff was successful in his training up until the very end, and rather than working on retaining him, and have another Navy Pilot, he was rubber stamped through the system as unable to meet standards. Because it was close to graduation, the command found that Plaintiff would not have time to bring his scores up to passing – even with extra training. However, the purpose of retaining an aviator does not stop just because graduation is around the corner. Plaintiff could have stayed past graduation to complete extra training, and graduated behind his class.

Plaintiff was never counseled on steps he needed to take to improve performance. He was awarded two extra training flights, and then subsequently referred to the PRB. It is an injustice that Plaintiff suffered from his command's failure to follow regulatory guidance for student aviation training. The fact that graduation was approaching does not mean Plaintiff should have been removed from training. He was two successful flights away from graduation, and would have been able to meet standards had he been counseled and afforded the opportunity to correct his deficiencies. Plaintiff's name was released to the local newspaper as having received his aviator wings. He was days away from graduation, and had received numerous positive notations in his training records, and successes in all but two flight exercises when he was suddenly cut from the program. He suffered emotionally, and as a result, made a poor decision concerning alcohol use in December of 2001. This behavior was out of character for Plaintiff, and can be associated with the depression and emotional strain from being so close to receiving his aviator wings, and then told he would not become a pilot just over a week before graduation.

To find that the actions of the Plaintiff's command in this case were not arbitrary and capricious is an injustice. Plaintiff did not benefit from the procedural safeguards in place for student aviators. It was administrative error that he was not identified for remedial training earlier in the phase. In the interest of justice, Plaintiff should be awarded his aviator wings, or at least have the opportunity to benefit from the remedial training and earn his wings.

## CONCLUSION

WHEREFORE, for the reasons aforesaid stated, Plaintiff respectfully requests the Court grant the following relief:

A. Deny the Defendant's Motion to Dismiss for Failure to State a Claim;

B. Deny the Defendant's Motion for Judgment Upon the Administrative Record;

C. Order that Plaintiff be reinstated to flight status or flight training; and that he be granted his wings as a Naval Aviator.

D. Order Plaintiff's military records be corrected to reflect the same;

E. Order that Plaintiff be awarded all back pay and other benefits to which he in entitled as a result of his flight status;

F. Award Plaintiff's attorneys fees and costs expended in pursuit of this claim;

G. Grant any other relief that the Court deems just and proper.

Respectfully submitted,

William E. Cassara
Attorney for Plaintiff, Malcolm B. Blankenship III
918 Hunting Horn Way
Evans, GA 30809

Certificate of Filing

I hereby certify that on this 12th day of June, 2008, a copy of "Plaintiff's Unopposed Motion For An Enlargement Of Time" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

William E. Cassara

Counsel for Plaintiff